IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

RISHI SHAH, et al.,

        Defendants.

Case No. 19 CR 864

Judge Thomas M. Durkin

**DEFENDANT RISHI SHAH'S MOTION**
**TO EXCLUDE EVIDENCE AND FOR RELATED RELIEF**

Defendant Rishi Shah respectfully moves this Court to (1) exclude evidence relating to the Government's recent reversal of position on the traceability of certain assets that the Government had previously conceded were not traceable to criminal proceeds and (2) preclude the Government from shifting its position on that issue at this late stage of the litigation on Mr. Shah's Motion to Dismiss or Alternatively for a New Trial (Doc. #490). The Government concedes it had not performed the sort of analysis required to establish the traceability of any such assets at the time that it obtained its restraint in November 2019, making such evidence immaterial to the issues on Mr. Shah's motion and unfairly prejudicial to Mr. Shah, who has detrimentally relied on the Government's concessions in structuring his litigation strategy with respect to the Motion. Moreover, the Government concedes that it had all the information required to perform its new analysis no later than *June 2023*, making it inexplicable that the Government did not present such evidence in support of its Motion for Preliminary Order of Forfeiture or its opposition to Mr. Shah's Motions to Amend or the Motion to Dismiss. Instead, the Government should be held to its prior concession that the assets in question are not traceable. In support of his motion, Mr. Shah states as follows:

1

**Mr. Shah's Motions to Amend**

1. On June 26, 2023, Mr. Shah filed a motion to amend this Court's protective order (Doc. #474) to release millions of dollars in assets that he claimed had been improperly restrained as a result of an overly broad forfeiture allegation in the Superseding Indictment (Doc. #12).

2. On July 10, 2023, the Government filed its Response to Mr. Shah's Motion to Amend the Protective Order (Doc. #482) (the "Response"). In that filing, the Government acknowledged, for the first time, that the Protective Order unlawfully restrained at least $4.8 million in assets that the Government had failed to trace to any criminal proceeds. *See* Ex. K to Resp. (Doc. #482-12).

3. On August 10, 2023, the Court issued an order "amend[ing] the protective order to release the $4,856,482.41 in property that ***the Government concedes*** is not traceable to criminal proceeds." Order (Doc. #500) at 3 (emphasis added). The Court further indicated that, "[t]o the extent that [Mr.] Shah believes that the amount of untainted property presently restrained exceeds $4,856,482.41, the Court will require further briefing and proceedings on that issue." *Id.*

4. Subsequent to the issuance of the Court's August 10 Order, the Government and Mr. Shah came to an agreement on an implementing order that "release[d] certain property from the Protective Order that ***the Government concedes*** is not derived from criminal proceeds," without prejudice to Mr. Shah's right to seek the release of additional assets. Order (Doc. #506) at 1–2 (emphasis added). The Court issued that order on August 18, 2023.

5. Relevant hereto, the August 18 Order required Investment Company B ("Company B") to release "42.1% of all liquid funds held in the name of Jumpstart Ventures, LLC, Jumpstart Ventures II, LLC, Gravitas Holdings, LLC, or Rishi Shah by [Company B] and any

[Company B] entities." *See id.* at 2. As a result of that order, Company B released $5,000,001.19 to Mr. Shah's counsel on or about September 12, 2023.

6.     On September 14, 2023, Mr. Shah filed a Supplemental Motion to Amend the Protective Order (Doc. #524) (the "Supplemental Motion"), seeking the release of additional funds.

7.     On October 12, 2023, the Court issued an order granting the Supplemental Motion, in which it held that "at this juncture, the proper course of action is to release the funds that ***the government concedes*** are not traceable to criminal proceeds" and found that "the amount that still need[ed] to be released to Shah [was] $8,580,592.43." Order (Doc. #551) at 2.

8.     Subsequent to that Order, the Government and Mr. Shah came to agreement on a second implementing order, which the Court entered on October 23, 2023. Order (Doc. #555). As reflected in the Order itself, "the parties both agree[d] that $4,657,883.12 from [Company B] should be released to Mr. Shah as a consequence of this Court's October 12, 2023 Order and have agreed to the issuance of this Order to provide for the release of those funds." Order (Doc. #555) at 2.

**Mr. Shah's Motion to Dismiss**

9.     On July 14, 2023, only four days after the Government first acknowledged the existence and scope of the unlawful restraint, Mr. Shah filed his Motion to Dismiss the Indictment or Alternatively for a New Trial (Doc. #490) (the "Motion"), relying in significant part on the Government's concession that at least $4.8 million in assets had been restrained by the Government "in excess of 'the amount traceable to criminal proceeds.'" *See, e.g.*, Mot. (Doc. #490) ¶¶ 21–22, 25; *see also* Mem. in Supp. (Doc. #491) at 1–2, 6, 10, 11–13, 15, 19; Reply (Doc. #537) at 1–4, 7, 32.

10.     The Motion was fully briefed on September 18, 2023, when Mr. Shah filed his Reply. *See* Reply (Doc. #537).

11.     At Mr. Shah's request, on December 11, 2023, the Court set an evidentiary hearing on Mr. Shah's Motion for January 3, 2024 and permitted Mr. Shah to conduct discovery against the Government and third parties in the three weeks leading up to the hearing. *See* Minute Entry (Doc. #629).

12.     In the intervening weeks, the Government and Mr. Shah worked together to obtain records via subpoena from numerous entities prior to the hearing relating to the value and liquidity of various investments that had previously been restrained by the Protective Order (Doc. #27). In particular, the subpoenas requested from each of the affected entities:

- records sufficient to show the dates and amounts of any liquidity events, distributions and payments between January 1, 2019 and present related to investments held in the name of Rishi Shah, Shradha Agarwal, Jumpstart Ventures II LLC, and Gravitas Holdings LLC;

- records sufficient to show the liquidity or illiquidity during 2020 of any investment held in the name of Rishi Shah, Shradha Agarwal, Jumpstart Ventures II LLC, and Gravitas Holdings LLC; and

- records sufficient to show the liquidity or illiquidity during 2019 and between 2021 and present of any investment held in the name of Rishi Shah, Shradha Agarwal, Jumpstart Ventures II LLC, and Gravitas Holdings LLC.

13.     In light of the Government's concessions relating to the traceability of the Company B assets, from which substantial distributions had been made during the relevant time period, Mr. Shah's counsel did not consider it necessary to request records from the affected entities relating to the value of any investments themselves, only the amount of the distributions.

**The Government's Reversal**

14.     During the Government's opening statement at the hearing on January 3, 2024, the Government asserted for the first time that approximately $8.4 million of the funds released to Mr. Shah under this Court's prior orders were, contrary to the Government's prior concessions, traceable to criminal proceeds. At the hearing, Mr. Johnston, then an attorney for the Government, stated as follows:

> Another thing you're going to learn, Your Honor—and this is probably going to surprise you, because it surprised us as well—as a result of this hearing, we went back and ***got more documents***, including from [Company B], and one of the things that we learned is that the monies returned to Mr. Shah, almost all of them, came from a single investment, three funds that were invested in a private company called Ruggable. . . . This was an underlying company that the [Company B] entities had invested in. And these were three separate investments. ***What we discovered*** is that actually every single incoming investment into a [Company B] vehicle that went—that bought Ruggable shares was 100 percent traceable. Meaning that the—of the $9.5 million that has gone to Bryan Cave's trust account, he was actually only entitled to approximately 1.1 million. ***This hearing today is being funded with criminal proceeds.***

*See* **Ex. 1** (excerpts of transcript of January 3, 2024 hearing) at 58:1–19 (emphasis added).

15.     When asked whether the Government had previously informed Mr. Shah's counsel of its reversal of position prior to the hearing, Mr. Johnston stated that he had conveyed a chart to Mr. Shah's counsel "last night" that contained the Government's analysis but that the Government had itself only "learned about it" two or three days before the hearing. **Ex. 1** at 59:24–60:13.[1]

16.     Later that same day, Forensic Accountant Megan Poelking was questioned by the Government and provided the explanation of the Government's reversal of its position. According to Ms. Poelking's testimony, Ms. Poelking received "***additional records***" from various investment

---

[1]     The chart Mr. Johnston referred to was sent via email to Mr. Shah's counsel at 4:59 p.m. the day before the hearing, shortly before Mr. Shah's counsel arrived at the airport to travel to the hearing.

funds through which she learned "***additional details***" as to "the specific investment vehicles that certain capital contributions" had "gone into." **Ex. 1** at 233:13–24 (emphasis added). In particular, she said, Company B "was able to provide two very detailed spreadsheets that showed the exact dates of the contributions, the amounts, and then the ultimate payouts." **Ex. 1** at 236:9–11.

17.     The Government then presented a chart detailing a new analysis prepared by Ms. Poelking (the "New Analysis"). *See* Gov't Ex. 2060. With respect to the entries in the chart relating to Company B, Ms. Poelking testifed:

> Q. And so why are there now four [Company B] investments where there are no funds that are traceable to criminal proceeds?
>
> A. Because in the last few weeks, when we've received ***additional information*** and we were able to break out the specific transfers to the funds and which investment vehicle it actually went into, we were able to determine that they did not invest in certain vehicles but they invested in others.

Tr. 240:19–25 (emphasis added).

18.     The next morning, the hearing was recessed indefinitely in light of potential conflict issues arising from the Government's reversal of its position. **Ex. 1** at 251:24–252:15.

19.     In the days that followed, the undersigned corresponded with Mr. Johnston to further ascertain the basis for the Government's reversal of position as part of his assessment of the potential conflict issues. *See* **Ex. 2** (January 8, 2024 email from W. Johnston). As part of that correspondence, Mr. Johnston confirmed that all of the information the Government used to develop the New Analysis was in the Government's possession no later than June 2023, but that it had not performed any such analysis until days before the hearing:

> The government also received the same information that [Company B] sent you back in June, and only made the connection that 100% of the Ruggable distributions were traceable to the fraud in preparation for the hearing last week. The only new information we received in preparation for the hearing was the specific dates of the wires, ***though, candidly, similar information appears to have been provided earlier by [Company B] in response to a grand jury subpoena in 2019*** (all of which was provided to Shah's prior counsel).

**Ex. 2** at 1 (emphasis added).

20.     The undersigned subsequently engaged outside counsel to advise it with respect to the potential conflict issues, ultimately obtained a signed waiver from Mr. Shah on March 8, 2024 as to the potential conflicts identified to date, and resumed his representation of Mr. Shah with respect to Mr. Shah's Motion on that same date.

**Grounds for Relief**

21.     The Government should be precluded from introducing evidence in relation to the New Analysis and should instead be held to its prior concessions. As explained further in the memorandum that Mr. Shah has filed contemporaneously with this motion:

- The New Analysis is immaterial with respect to the issues on Mr. Shah's Motion, which concerns whether the Government had probable cause to obtain the restraint of the property in question *in November 2019*—not whether it has developed such probable cause subsequent to the filing of the Motion. Consideration of the New Analysis would therefore result in unnecessary delay and waste of time, all while causing unfair prejudice to Mr. Shah. *See* Mem. § I.

- Permitting the Government to reverse its position now—after Mr. Shah has detrimentally relied on its concessions in litigating the Motion and his case in general—would cause unfair prejudice to Mr. Shah and violate a number of well-established doctrines designed to promote the fairness and predictability of judicial proceedings, including waiver, forfeiture, law of the case, judicial and equitable estoppel, and Due Process itself. *See* Mem. § II.

WHEREFORE Mr. Shah prays that this Court exclude evidence of the New Analysis from its consideration on his Motion; that the Court preclude the Government from reversing its position with respect to the traceability of the Company B assets it previously conceded were not traceable to criminal proceeds; and for such other and further relief as the Court deems just and proper.

Dated: April 2, 2024

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2080
Fax: (314) 259-2020
*richard.finneran@bryancave.com*

*Attorney for Defendant Rishi Shah*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon all counsel of record by operation of the Court's electronic filing system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN