# EXHIBIT 2

Email from W. Johnston

January 8, 2024

| | |
|---|---|
| **From:** | Johnston, William (CRM) <William.Johnston4@usdoj.gov> |
| **Sent:** | Monday, January 8, 2024 4:06 PM |
| **To:** | Richard Finneran; William Burck |
| **Cc:** | Madden, Matthew (USAILN); John Cline |
| **Subject:** | RE: Follow Up |



Rich,

We take you at your word that you were not knowingly misrepresenting to the Court the status of the Company B monies, notwithstanding the information that Company B provided you. The government also received the same information that Company B sent you back in June, and only made the connection that 100% of the Ruggable distributions were traceable to the fraud in preparation for the hearing last week. The only new information we received in preparation for the hearing was the specific dates of the wires, though, candidly, similar information appears to have been provided earlier by Company B in response to a grand jury subpoena in 2019 (all of which was provided to Shah's prior counsel). So we have no reason to believe that you or BCLP violated 1957.

At this point, we still oppose any continuance of sentencing. In light of the status of the Ruggable monies, you and Mr. Shah will have to decide whether continuing with the evidentiary hearing and motion to dismiss is still worthwhile. We believe it will be easier to get approval from MLARS/AAG to permit you to keep a reasonable amount of the monies for attorneys' fees for sentencing if we keep the sentencing date as is.

Regards,

Will

---

**From:** Richard Finneran <Richard.Finneran@bclplaw.com>
**Sent:** Monday, January 8, 2024 3:54 PM
**To:** Johnston, William (CRM) <William.Johnston4@usdoj.gov>; William Burck <williamburck@quinnemanuel.com>
**Cc:** Madden, Matthew (USAILN) <MMadden@usa.doj.gov>; John Cline <cline@johndclinelaw.com>
**Subject:** [EXTERNAL] RE: Follow Up

Will,

Thanks for this. We are continuing over here at BCLP to work through the many issues presented by the developments last week. I have a couple questions that I'm hoping you might be able to help us answer to assist us in our consideration most especially of the ethical issues with our continuing to represent Mr. Shah.

First, I am enclosing a copy of correspondence from June 15 of this past year with Company B. This was information that we had requested and received as a part of the forfeiture hearing preparations. We introduced a part of this information in exhibits at the forfeiture hearing in June. As you will see, the first chart then provided by Company B did break out the investments by investment date (month and year, but not date). The second chart then indicated the amount of proceeds that were connected to each of the specific investments. It shows, for example, that approximately $10 million of the distributions came from the Ruggable proceeds.

1

I've reviewed your email below stating what you articulate as the basis for your belief that the funds released come from criminal proceeds. I am trying to determine what if anything in your email you below is information that Company B Company B had not disclosed back in June. I principally because I want to confirm that the Government is not taking the position, given the attached, that I or my firm had knowledge that any of the released funds were traceable criminal proceeds prior to January 3. That will be important for our analysis of the 1957 issue.

Second, there are a number of impending deadlines in the case. Tomorrow our response to the amended motion for preliminary forfeiture is due. Our sentencing memoranda and expert disclosures are due in the coming weeks. I do not believe that we can continue to do the needed work to prepare and meet those deadlines until we have fully analyzed the conflict issue and assure ourselves either that there is no conflict or that it is waivable (and that Mr. Shah agrees to waive it). Frankly, I am just not sure how I can plausibly provide Mr. Shah advice on any of those matters until we have received adequate assurance for my firm and myself personally. For that reason, I intend to ask in the status update we provide tomorrow that the Court vacate all deadlines for Mr. Shah for the time being, as well as the sentencing date. Can you please let me know whether the Government agrees or would oppose? I understand why you would hesitate to do so, but I ask you to please earnestly consider what my firm and I are facing and consider whether the Government might agree, given the exceptional circumstances presented.

I hope to have further updates for you when we speak tomorrow, but these two points are critical for how (or if) we move forward.

Thanks.

RICHARD E. FINNERAN
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - St. Louis, MO USA
richard.finneran@bclplaw.com
T: +1 314 259 2080

---

**From:** Johnston, William (CRM) <William.Johnston4@usdoj.gov>
**Sent:** Friday, January 5, 2024 10:44 AM
**To:** William Burck <williamburck@quinnemanuel.com>; Richard Finneran <Richard.Finneran@bclplaw.com>
**Cc:** Madden, Matthew (USAILN) <Matthew.Madden@usdoj.gov>; John Cline <cline@johndclinelaw.com>
**Subject:** RE: Follow Up


Rich / Bill,

I'm happy to explain. We (and you) received the attached two files from Company B in response to our subpoena to them for records in connection with the evidentiary hearing. Company B Company B_537 is a spreadsheet listing all incoming investments/wires related to Mr. Shah, Jumpstart Ventures LLC, Jumpstart Ventures II LLC, and Gravitas Holdings, and shows which wire corresponds to which Company B Company B entity.

Here is the pertinent screenshot from Company B Company B_537:

| Company | Company B entity | Investor entity | Round |
|---|---|---|---|
| TechStyle | Company B - Just Fab II LLC | JumpStart Ventures LLC | TechStyle-II |
| Home Chef | Company B - HomeChef II LLC | JumpStart Ventures II LLC | Home Chef - Series A-II |
| Catch Co. | Company B - MTB LLC | JumpStart Ventures II LLC | CatchCo - Series A |
| Catch Co. | Company B - MTB LLC | JumpStart Ventures II LLC | CatchCo - Convertible - I |
| Message Control | Company B - Mail Control I LLC | JumpStart Ventures II LLC | Message Control |
| Ruggable | Company B - Ruggable LLC | Gravitas Holdings LLC | Ruggable - Series Seed |
| Ruggable | Company B - Ruggable III LLC | Gravitas Holdings LLC | Ruggable - Series Seed II |
| Ruggable | Company B - Ruggable III LLC | Gravitas Holdings LLC | Ruggable - Series Seed III |

What it shows is that there were only three investments into Ruggable in the name of Gravitas Holdings LLC, corresponding to three rounds of fundraising into two different Company B entities.

Those three investments are 100% traceable wires, as demonstrated in GX1029, which was featured in the forfeiture hearing, also attached here.

| Forfeiture Allegation Reference | Source of Funds | Funds Transferred To | |
|---|---|---|---|
| 1C | Gravitas Holdings (Pershing x6290) | AP 100 W Huron Investors LLC | All right, title, and |
| 1E | Gravitas Holdings (Pershing x6290) | Company B | All right, |
| 1E | Gravitas Holdings (Pershing x6290) | Company B | All right, |
| 1E | Gravitas Holdings (Pershing x6290) | Company B | All right, |
| 1E | Gravitas Holdings (Pershing x6290) | Company B | All right, |
| 1E | Gravitas Holdings (Pershing x6290) | Company B | All right, |

The court found the tracing set forth in the Ms. Poelking's summary charts and GX 1029 to be accurate—indeed, neither of you have ever contested the tracing of the equity raise funds that came through the Gravitas Holdings account at Pershing—and it entered a preliminary of forfeiture based on the tracing in GX 1029.

Company B_001 shows the distributions from the Company B entities as they corresponded to each seed.

3

| # | Portfolio company | Transaction | Round | Date received by Gu | Escrow da |
|---|---|---|---|---|---|
| 1 | Ruggable | Tax Distribution - 2018 | Seed | 27-Sep-19 | 9-Nov-20 |
| 2 | Ruggable | Tax Distribution - 2018 | Seed II | 27-Sep-19 | 9-Nov-20 |
| 3 | Ruggable | Tax Distribution - 2018 | Seed III | 27-Sep-19 | 9-Nov-20 |
| 4 | Ruggable | Return of capital | Seed | 23-Dec-19 | 9-Nov-20 |
| 5 | Ruggable | Return of capital | Seed II | 23-Dec-19 | 9-Nov-20 |
| 6 | Ruggable | Tax Distribution - 2019 | Seed | 13-Jan-20 | 9-Nov-20 |
| 7 | Ruggable | Tax Distribution - 2019 | Seed II | 13-Jan-20 | 9-Nov-20 |
| 8 | Ruggable | Tax Distribution - 2019 | Seed III | 13-Jan-20 | 9-Nov-20 |
| 12 | Ruggable | Tax Distribution - 2020 | Seed | Various | 9-Nov-20 |
| 13 | Ruggable | Tax Distribution - 2020 | Seed II | Various | 9-Nov-20 |
| 14 | Ruggable | Tax Distribution - 2020 | Seed III | Various | 9-Nov-20 |
| 17 | Ruggable | Debt repayment | Seed II | 30-Oct-20 | 9-Nov-20 |
| 18 | Ruggable | Debt repayment | Seed III | 30-Oct-20 | 9-Nov-20 |
| 20 | Ruggable | Partial exit proceeds | Seed | 12-Jan-21 | 21-Jan-21 |
| 21 | Ruggable | Partial exit proceeds | Seed II | 12-Jan-21 | 21-Jan-21 |
| 22 | Ruggable | Partial exit proceeds | Seed III | 12-Jan-21 | 21-Jan-21 |
| 30 | Ruggable | Deferred exit proceeds | Seed | 15-Oct-21 | 18-Jul-22 |
| 31 | Ruggable | Deferred exit proceeds | Seed II | 15-Oct-21 | 18-Jul-22 |
| 32 | Ruggable | Deferred exit proceeds | Seed III | 15-Oct-21 | 18-Jul-22 |
| 36 | Ruggable | Share repurchase | Seed | 13-Jan-22 | 18-Jul-22 |
| 41 | Ruggable | Tax distribution Q1-Q3 2021 | Seed | Various | 18-Jul-22 |
| 42 | Ruggable | Tax distribution Q1-Q3 2021 | Seed II | Various | 18-Jul-22 |
| 43 | Ruggable | Tax distribution Q1-Q3 2021 | Seed III | Various | 18-Jul-22 |
| 45 | Ruggable | Tax Distribution Q4+TRUE UP 2021 & Q1 2022 | Seed | Various | 23-Dec-22 |
| 46 | Ruggable | Tax Distribution Q4+TRUE UP 2021 & Q1 2022 | Seed II | Various | 23-Dec-22 |
| 47 | Ruggable | Tax Distribution Q4+TRUE UP 2021 & Q1 2022 | Seed III | Various | 23-Dec-22 |
| 49 | Ruggable | Tax Distribution Final 2022 & Q1-Q3 2023 | Seed | Various | 20-Dec-23 |
| 50 | Ruggable | Tax Distribution Final 2022 & Q1-Q3 2023 | Seed II | Various | 20-Dec-23 |
| 51 | Ruggable | Tax Distribution Final 2022 & Q1-Q3 2023 | Seed III | Various | 20-Dec-23 |

Every single distribution from Ruggable to Gravitas Holdings comes from a Round where the incoming investment funds were 100% traceable, and the court ruled that appreciation on tainted funds is itself forfeitable. Accordingly, all the Ruggable distributions, which sum up to $10,094,288, are forfeitable as criminal proceeds.

Per GX 1029 and Company B_537, there were three other investments that were 100% traceable to the counts of conviction. A $75,000 investment on 8/12/16 in CatchCo Convertible – I; and three $25,000 investments in Spot & Tango, Voyage, and Wink & Nod, respectively, all sent in one $75,000 wire on 10/18/18. Per Company B_0001, those four investments had minimal distributions from December 2019 through December 2022, totaling $199,244, and then a $123,147 distribution in Jan. 2023. So we have $322,391 from those investments, for a total of $10,416,679 in forfeitable distributions.

Ms. Poelking's spreadsheet in the evidentiary hearing, GX 2060, tried to calculate what he and Ms. Agarwal, through Jumpstart or Gravitas, would have been entitled to receive absence the excessive restraint. After disaggregating the investments into their respective vehicles, there were three Company B investments in the name of "Jumpstart Ventures II LLC" that were improperly restrained by the protective order—they are Home Chef Series A-11, CatchCo Series A, and Message Control. Totaling up all the untainted distributions the defendant would have been entitled to, you have $1,268,242. (There was also an investment in TechStyle in the name of "Jumpstart Ventures LLC," which the

government did not name in the protective order, but which Company B nevertheless restrained on their own, which would have yielded approximately $479,113 in distributions in 2020 and 2021; because "Jumpstart Ventures LLC" was not named in the protective order as it applied to Company B, the restraint of those distributions was not attributed to the government's overbroad protective order or reflected in Ms. Poelking's chart.)

There were two wires sending Company B Company B funds back to Bryan Cave: one on September 11, 2023 in the amount of $5,000,001, and another on October 25, 2023 in the amount of $4,657,883, totaling $9,657,884. So if we assume that all the untainted funds that were improperly restrained by the government's order ($1,268,242) were released first, you have approximately $8.4 million that is criminal proceeds and was incorrectly returned. Ms. Shah was entitled to even less than $1.268 million because Ms. Agarwal owned 15% of Jumpstart Ventures II and we would be seeking to forfeit her share to satisfy the money judgment that has been entered against her. Even if you assume the entire $479,113 distribution owed to Jumpstart Ventures through TechStyle was also released in the first wire—though of course, Mr. Shah would have no entitlement to Ms. Agarwal's interest—you still have around $8 million in criminal proceeds that were released incorrectly to Bryan Cave.

I'm happy to answer any other questions you may have.

Regards,

Will

---

**From:** William Burck <williamburck@quinnemanuel.com>
**Sent:** Friday, January 5, 2024 9:12 AM
**To:** Richard Finneran <Richard.Finneran@bclplaw.com>
**Cc:** Madden, Matthew (USAILN) <MMadden@usa.doj.gov>; Johnston, William (CRM) <William.Johnston4@usdoj.gov>; John Cline <cline@johndclinelaw.com>
**Subject:** [EXTERNAL] Re: Follow Up

Following on Rich's email, we also need to know more about the basis for the government's latest claim that the 8m are criminal proceeds. We cannot make a proper assessment without that. I would be available Tuesday morning for a call.

Sent from my iPad

> On Jan 5, 2024, at 8:55 AM, Richard Finneran <Richard.Finneran@bclplaw.com> wrote:
>
> **[EXTERNAL EMAIL from richard.finneran@bclplaw.com]**
>
> Matt, thank you. I appreciate your feedback. And I am very grateful to hear that at least you and Will share my view that our conduct in this case has not run a foul of any criminal statute. I also understand, of course, that you are not in a position to buy DOJ to that position.

Speaking only for myself, I expect to meet later today with my firm's management and general counsel to discuss the issue further. To that end, it would be helpful if you could provide a narrative explanation for why the government now believes that approximately $8 million of the released funds are traceable to criminal proceeds. Assessing whether we agree with that analysis and identifying when the facts supporting that analysis first became available to us may be critical to our assessment of next steps. We got part of the explanation during Ms. Poelking's testimony, but my notes are not complete, and I was informed yesterday by the court reporter that she does not believe that she can cash the check for our transcript order until this issue is resolved. (If you also might be willing to order the transcript yourself and sharing a copy with me, that could help.)

Thanks. Might also be good if we could set a call for Tuesday morning to discuss the requested status update for the court.

RICHARD E. FINNERAN
Partner
richard.finneran@bclplaw.com
T: +1 314 259 2080

On Jan 5, 2024, at 7:28 AM, Madden, Matthew (USAILN) <Matthew.Madden@usdoj.gov> wrote:

One edit below. I was referring to *yesterday's* off-the-record discussion with Judge Durkin.

**From:** Madden, Matthew (USAILN)
**Sent:** Friday, January 5, 2024 7:26 AM
**To:** Richard Finneran <Richard.Finneran@bclplaw.com>; William Burck <williamburck@quinnemanuel.com>
**Cc:** Johnston, William (CRM) <William.Johnston4@usdoj.gov>; 'John Cline' <cline@johndclinelaw.com>
**Subject:** Follow Up

Rich and Bill,

During the off-the-record discussion with Judge Durkin ~~today~~ yesterday, you expressed concern about (1) the potential clawback/forfeiture of the funds in your possession, given the government's view that more than $8 million that was sent to Bryan Cave/Shah this summer and fall was fraud proceeds; and (2) your potential exposure and your firm's potential exposure to 1957 liability.

6

As discussed, Will and I need more factual background, but we are open to pursuing an agreement pursuant to which your firms could keep a reasonable amount of money in order to stay on the case through sentencing. We believe our offices would be open to it as well, but an agreement along those lines would need the approval of not only our offices but MLARs and an AAG. If you would like for us to consider the negotiation of such an agreement, we'll first need a full accounting of what has happened with the money, including (1) how much was spent and how much is leftover; (2) when the money was spent and what it was spent on; (3) your fee agreements with Shah; and (4) a proposal for a reasonable amount of money to keep for fees through the sentencing.

On the latter issue, Will and I have not had the chance to discuss it with the leadership of our offices and thus we do not speak for our offices and these views are not binding on DOJ. But based on our understanding of the facts and law, we do not believe any lawyer or law firm in this case violated 1957 or any other criminal statute for that matter. And given the safe harbor provision of 18 USC 1957(f)(1), we do not see any criminal liability for a law firm or lawyer who would be compensated going forward with unlawful proceeds for legal services rendered to Mr. Shah in his criminal case. *See United States v. Hoogenboom*, 209 F.3d 665, 669 (7th Cir. 2000); *United States v. Velez*, 586 F.3d 875, 879 (11th Cir. 2009); *United States v. Rutgard*, 116 F.3d 1270, 1291 (9th Cir. 1997).

Matt

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain

information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.