IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>RISHI SHAH, et al.,<br><br>        Defendants. | Case No. 19 CR 864<br><br>Judge Thomas M. Durkin<br><br>**EXPEDITED BRIEFING AND<br>DECISION REQUESTED** |

## DEFENDANT RISHI SHAH'S MOTION TO CONTINUE EVIDENTIARY HEARING

Defendant Rishi Shah respectfully moves this Court to continue the evidentiary hearing on his Motion to Dismiss and/or for New Trial (Doc. #490) (the "Motion") to a date at least four (4) weeks from the date of this motion in order to: (1) allow the Court the opportunity to rule, prior to resuming the hearing, on the threshold legal question raised in Mr. Shah's Motion to Exclude Evidence and for Related Relief (Doc. #688) and Mr. Shah's request to call current and former Government attorneys as witnesses; (2) permit Mr. Shah the time required to obtain additional evidence that may be necessary to support his Motion in light of the Government's recent shift in position; and (3) provide adequate time for the parties to finalize an agreement with respect to the disposition of approximately $8.4 million in funds previously released to Mr. Shah under this Court's orders (the "Released Funds"). In support of his motion, Mr. Shah states as follows:

**The Government's Reversal of Its Position**

1.    This Court began the evidentiary hearing on Mr. Shah's Motion to Dismiss on January 3, 2024. *See* Minute Entry (Doc. #655).

2.    Based upon the Government's concession that the Released Funds were not traceable to criminal proceeds, the undersigned anticipated calling William Burck to testify at the

1

hearing to establish that, if not for the unlawful restraint of the Released Funds, Quinn Emanuel would have represented Mr. Shah as his counsel of choice in his criminal case.

3. The undersigned also anticipated calling Mr. Shah to testify—recognizing that doing so is a weighty decision that should only be undertaken if Mr. Shah's testimony might have the potential to sway the Court's decision on the Motion to Dismiss.

4. The Court recessed the hearing on its second day in light of concerns raised by the Government's newest change in its position with respect to the traceability of the Released Funds.

5. Specifically, although the Government had not in fact traced "all right, title, and interest" in the assets held by Investment Company B to criminal proceeds when it secured the Superseding Indictment or sought to restrain those assets in 2019—and the Government subsequently made multiple concessions, representations, and agreements that those assets were *not* traceable and should be released to Mr. Shah—the Government claimed in its opening statement—four years later—to have conducted a new analysis suggesting that the Released Funds were traceable to criminal proceeds.

6. After the hearing was recessed, the undersigned's firm retained outside counsel in order to advise it with respect to the potential conflict issues arising from the Government's change in position.

7. Approximately three weeks ago, on March 8, 2024, Mr. Shah executed a written waiver of the potential conflicts identified, at which time Mr. Shah's counsel resumed his representation of Mr. Shah with respect to the Motion.

8. Between January 4 and March 8, 2024, the Government attorneys in this case, AUSA Matthew Madden and William Johnston, both resigned from Government service. In their

stead, AUSA Corey Rubenstein, AUSA Jason Yonan, and Assistant Chief Kyle Hankey have entered in the case.

### The Consequences of the Government's Reversal

9. The Government's attempt to introduce new traceability analysis for the Released Funds—contrary to its prior concessions and representations to the Court and Mr. Shah that the Released Funds were not traceable—has raised threshold legal questions the Court should consider before resuming the evidentiary hearing.

10. To address those threshold legal questions, Mr. Shah has filed, contemporaneously herewith, a motion to exclude the Government's new analysis and preclude the Government's reversal of position with respect to the traceability of the Released Funds. *See* Mot. to Exclude Evidence and for Related Relief (Doc. #688) (the "Motion to Exclude").

11. The Motion to Exclude explains that the Government should be barred from changing its position with respect to the traceability of the Released Funds because several well-established doctrines, including waiver, forfeiture, law of the case, and judicial or equitable estoppel, preclude the Government's sudden reversal.

12. In order to ensure an orderly sequencing of the hearing and to avoid unfair prejudice to Mr. Shah arising from the Government's reversal of position, the Court should rule on those threshold legal issues before Mr. Shah is forced to decide whether to testify and whether to call his original attorney William Burck to testify, especially given the potential implications for Mr. Shah's right against self-incrimination and any potential waiver of privilege.

### Effect on the Evidentiary Hearing

13. A ruling from the Court on the Motion to Exclude will fundamentally alter the nature and scope of the evidence and arguments to be presented an evidentiary hearing.

14. If the Court determines that the Government is procedurally barred from asserting the traceability of the Released Funds, it will significantly streamline the evidence required to be presented at the hearing.

15. If, by contrast, the Court were to determine that the Government is not procedurally barred from asserting the traceability of the Released Funds, then the Court should reset the evidentiary hearing to determine first whether the Released Funds are in fact traceable to criminal proceeds as the Government now contends.

16. If the Court were to determine that the Government should be permitted to change its position with respect to the traceability of the Released Funds and that they are in fact traceable, then significant additional factual investigation will be required regarding illegally restrained assets **beyond** the Released Funds, in order to substantiate the grounds for Mr. Shah's Motion to Dismiss.

17. In particular, additional third-party discovery and expert investigation would be necessary relating to the value such assets in order to demonstrate what additional funding might have been available to Mr. Shah and Ms. Agarwal if not for the Government's unlawful restraint of untainted property.

18. Prior to the Government's reversal of its position, Mr. Shah expected to be able to demonstrate the availability of several millions of dollars in restrained (but untainted) **distributions** from the affected entities in order to substantiate his and Ms. Agarwal's claims relating to the impact of the Government's unlawful restraint.[1] Given the substantial amount of distributions that

---

[1] Indeed, the undersigned's opening statement at the January 3 hearing, which preceded the Government's announcement of its reversal in position, focused extensively on the amount of such distributions and their likely sufficiency to permit Mr. Shah to retain his counsel of choice in the absence of the illegal restraint. *See* Ex. 1 to Mot. to Exclude (Doc. #688-1) (excerpts of transcript of January 3, 2024 hearing) at 28:6–32:8.

had been conceded not to be traceable, it was not necessary to engage in the more difficult analysis of what value remained in other non-distributed assets held by the various entities.

19. As such, the subpoenas that Mr. Shah worked with the Government to issue prior to the January 3 hearing requested only the following records:

- records sufficient to show the dates and amounts of any liquidity events, distributions and payments between January 1, 2019 and present related to investments held in the name of Rishi Shah, Shradha Agarwal, Jumpstart Ventures II LLC, and Gravitas Holdings LLC;

- records sufficient to show the liquidity or illiquidity during 2020 of any investment held in the name of Rishi Shah, Shradha Agarwal, Jumpstart Ventures II LLC, and Gravitas Holdings LLC; and

- records sufficient to show the liquidity or illiquidity during 2019 and between 2021 and present of any investment held in the name of Rishi Shah, Shradha Agarwal, Jumpstart Ventures II LLC, and Gravitas Holdings LLC.

20. The records provided by the affected entities in response to the subpoenas generally did not disclose information sufficient to determine the value of any non-distributed assets at any of the potentially relevant points in time.

21. If, however, the Court were to accept the Government's reversal of its position, then additional investigation, including expert evaluation, relating to the value of such non-distributed assets would likely be required to ascertain the full impact of the Government's unlawful restraint at various potentially relevant points in time.

**The Need for Additional Investigation**

22. Undersigned counsel has started the investigation described above, but it is not possible for that investigation to be completed before April 8, the date currently scheduled for the Court to resume the evidentiary hearing. For example, on March 22, 2024, the undersigned contacted representatives of several of the affected entities to request documents relating to the value of other improperly restrained property. Perhaps the most important of those entities—Investment Company F, which received approximately $1.4 million in contributions that the

Government concedes were not criminally derived—did not respond to multiple emails from the undersigned until Thursday, March 28, 2024, and Mr. Shah's counsel was first able to engage in substantive discussions with counsel for Investment Company F on Friday, March 29, 2024.

23. Based on that discussion, Mr. Shah does not expect to receive records from Investment Company F until later this week, which provides insufficient time in advance of the hearing to analyze any such records. The same is true of several other entities who have responded to Mr. Shah's requests.

24. When such records are received, expert analysis will likely be required to interpret and understand them. In that event, additional time will be required to permit such expert analysis to be completed and disclosed to the Government sufficiently in advance of the hearing for the Government to prepare any response it may have to such evidence.

25. In the event that the Court were to permit the Government to reverse its position with respect to the Released Funds and to accept its new analysis, determining the value at various points in time of untainted assets other than the Released Funds would be highly relevant to the Court's determination of the legal issues underlying Mr. Shah's Motion.

26. With respect to Investment Company F in particular, Mr. Shah anticipates that its records will show that it held significant value in untainted investments that could have provided significant additional funding to Mr. Shah and Ms. Agarwal to assist them in retaining their counsel of choice.[2]

---

[2] Notably, Investment Company F was not previously considered in the calculating the present value of the restrained assets in the parties' Joint Submission in connection with Mr. Shah's Supplemental Motion to Amend (Doc. #550), because the parties were "lacking any information from [Investment Company F] to reflect current value." *See id.* at 3. Contributions to Investment Company F, however, make up nearly **25 percent** of the nontraceable contributions identified by the Government. *See id.* at 2 (reflecting that $1,350,000 of the $5,504,473 nontraceable contributions came from Investment Company F).

**Impact on the Evidence to Be Elicited at the Hearing**

27.     The Court's ruling on the Motion to Exclude, as well as the factual investigation described above, will also significantly impact whether the testimony of Mr. Burck and/or Mr. Shah will be relevant or necessary to the Court's determination of the Motion.

28.     In particular, the undersigned does not wish to subject Mr. Shah to cross-examination unless doing so would be advisable based on the analysis contemplated above.

29.     Nor does the undersigned wish to place Mr. Shah in the position of calling his original attorney Mr. Burck to the stand before a determination can be reached as to whether the assets that the Government still concedes are not traceable to criminal activity would have been sufficient to hire Mr. Burck, had they not been unlawfully restrained.

30.     Requiring Mr. Shah to make those decisions while those questions are still undetermined would cause unfair prejudice to Mr. Shah, as a direct result of the Government's reversal of its position.

**Potential Testimony by Current and Former Government Attorneys**

31.     In addition, there is at least one other matter that that requires resolution in connection with the evidentiary hearing, and its resolution in advance of the hearing will serve judicial economy by streamlining what evidence will need to be presented—namely, whether Mr. Shah will be permitted to call current or former Government attorneys to testify at the hearing.

32.     Mr. Shah has previously requested the opportunity to call various Government attorneys to the stand in order to inquire of them as to their knowledge and conduct with respect to the unlawful restraint prior to the conclusion of Mr. Shah's trial. *See* Resp. to Gov't Obj. to Doc. Requests &Witness List (Doc. #651).

33.     The Court has yet to make a final determination on that question.

34. In light of the departure of Messrs. Johnston and Madden from the Department of Justice, it may now be necessary for the Court to issue subpoenas in order to compel their attendance, in the event that the Court grants Mr. Shah's request to call them as witnesses.

35. A ruling from the Court on that issue will aid both parties in tailoring their preparations for the evidentiary hearing based upon what evidence the Court concludes should (or should not) be permitted to be introduced.

### Need to Finalize Agreement Relating to Released Funds

36. On Friday, March 29, 2024, Mr. Shah and the Government reached an agreement that is expected to obviate the need for the Court to adjudicate the ultimate disposition of the Released Funds.

37. The agreement, however, has yet to be memorialized in writing, and it is likely that additional orders of the Court will be required to bring the agreement into force.

38. Mr. Shah currently awaits a proposed draft of a written agreement from the Government. He expects to receive a draft within the coming week.

39. Allowing time before the hearing for that agreement to be finalized will help to ensure that the need to memorialize and execute that agreement will not unnecessarily impair the parties' ability to adequately prepare for the hearing.

40. It will also ensure that Mr. Shah's counsel will be able to prepare for and conduct the hearing using the resources that the Government has agreed not to pursue under its agreement with Mr. Shah.

### Conclusion

41. In the three weeks since the undersigned resumed his representation of Mr. Shah with respect to the Motion, he has dedicated his full time and effort to Mr. Shah's case, subject

only to minor obligations in other matters. The undersigned's work has involved working multiple weekends and many late nights.

42. Despite his best efforts, the undersigned requires additional time in order to complete necessary preparations before the hearing is resumed, as described above, as a result of the Government's reversal of its position with respect to the traceability of the Released Funds.

43. Allowing such time will also permit the Court to resolve threshold legal issues relating to the Government's shift in position, as well as the Government's objections to its current and former attorneys being called to testify.

44. The requested continuance will further permit the parties the time required to memorialize and execute their agreement with respect to Mr. Shah's ability to retain a portion of the Released Funds, thereby permitting his counsel to conduct the hearing free from any hindrance on the use of that portion of the Released Funds.

45. Finally, the additional time requested herein is necessary in order to ensure that a complete record is made with respect to Mr. Shah's Motion.

46. The need for additional time has arisen entirely from the Government's reversal of position with respect to the Released Funds. The Government's reversal has necessitated a fundamental shift in the undersigned's approach with respect to the evidentiary hearing and the preparation of evidence and arguments that would not have been necessary in the absence of such a reversal.

47. Whether the undersigned advises Mr. Shah to take the stand and/or to call Mr. Burck to testify depends in large part on an analysis of the value of restrained investments beyond the Released Funds, which analysis will require additional time to complete, based upon records that have been requested but not yet received.

48. Failing to grant the undersigned adequate time to obtain the needed evidence and conduct the required analysis would cause unfair prejudice to Mr. Shah as a direct result of the Government's shift in position.

49. This motion is not made for purposes of delay, but instead in good faith and to promote the orderly and complete adjudication of Mr. Shah's Motion.

### Government's Position

50. Prior to filing the instant Motion, Mr. Shah sought the consent of AUSA Corey Rubenstein to the relief requested herein. AUSA Rubenstein indicated that the Government opposes Mr. Shah being granted the requested relief.

51. Mr. Shah requests that the Court require an expedited response from the Government in order for the instant motion to be decided in advance of April 8, 2024, the current setting for the resumption of the evidentiary hearing. AUSA Rubenstein has indicated that the Government will notify the Court of its position with respect to any expedited briefing schedule upon review of the Motion.

WHEREFORE Mr. Shah prays that this Court continue the evidentiary hearing until a date on or after April 30, 2024, and for such other and further relief as the Court deems just and proper.

Dated: April 2, 2024

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2080
Fax: (314) 259-2020
*richard.finneran@bryancave.com*

*Attorney for Defendant Rishi Shah*

10

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing was served upon all counsel of record by operation of the Court's electronic filing system.

                                            */s/ Richard E. Finneran*
                                            RICHARD E. FINNERAN